# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| AXIS SURPLUS INSURANCE COMPANY | § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-625-S |
| CHARLES MERCER and OFELIA MERCER | § § § | |

## MEMORANDUM OPINION AND ORDER

This insurance coverage dispute is before the Court on cross-motions for summary judgment filed by Plaintiff Axis Surplus Insurance Company ("Insurer") and Defendants Charles Mercer and Ofelia Mercer ("Property Owners"). The Insurer seeks a declaratory judgment that the Property Owners' "all-risks" insurance policy does not cover interior water damage from a rainstorm that occurred while the roof was being replaced on two buildings subject to the policy. For the reasons set forth below, the Court **GRANTS** Plaintiff Axis Surplus Insurance Company's First Amended Cross-Motion for Summary Judgment [ECF No. 12] and **DENIES** Defendants' Motion for Summary Judgment [ECF No. 8].

### I. BACKGROUND

The Property Owners were the named insureds under commercial property insurance policy No. ESC62727 ("Policy"). Compl. [ECF No. 1] ¶ 6. The Policy provided coverage for Dakota Place Apartments ("Property"), a multi-building apartment complex in Hurst, Texas, effective from December 4, 2019, to December 4, 2020. *Id.* ¶¶ 6-7.

The parties do not dispute how the Property was damaged. The Property Owners hired roofers to replace the roofs at the Property. After removing the whole roof on one building and part of the roof on another building, the roofers placed tarps over the open areas, securing them

with wood blocks. An overnight rainstorm then damaged the interior of both buildings. *See id.* ¶¶ 10, 14-15; Defs.' Br. [ECF No. 9] at 7 ("The roof system was under construction when [the roofing company removed] more of the functioning roof over Buildings 3 and 4 than it could replace before the rainstorm."); Defs.' App. [ECF No. 10] at 184-85 ("[T]he roofs on Building 4 and the lower 1/3 of Building 3 had been removed" when it rained.).

The Insurer's investigator concluded that the "tarps and wood-blocking were not utilized in a recognized waterproofing methodology." *See* Defs.' App. 189. The investigator also determined that some of the tarps had blown off during the storm, and the wood blocking "created a ponding area preventing water diversion and allow[ing] for additional water" to enter and damage the Property. *Id.* The Property Owners do not dispute the investigator's conclusions about what caused damage to the Property. *See* Defs.' Br. 7 (noting the investigator's report is "[c]onsistent with what the Mercers told AXIS").

The Property Owners filed a claim under the Policy. Compl. ¶ 10. The Policy provides coverage for "direct physical loss . . . or damage . . . caused by or resulting from any Covered Cause of Loss." Defs.' App. 64. "Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy."[1] Defs.' App. 66, 101. The Policy identifies numerous exclusions to coverage. As relevant here, the Policy excludes coverage "for loss of or damage to . . . [t]he interior of any building or structure . . . caused by or resulting from rain . . . whether driven by wind or not, unless . . . [t]he building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters." *Id.* at 105. In essence, the

---

[1] The Policy is an "all-risks" policy, a "special type of coverage that extends to risks not usually covered under other insurance; recovery under an all-risk policy will be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 504 (5th Cir. 2000) (quoting *U.S. Indus., Inc. v. Aetna Cas. & Sur. Co.*, 690 F.2d 459, 461 (5th Cir. 1982)).

Policy does not provide coverage for interior rain damage unless the roof or walls first experience a "Covered Cause of Loss" as defined by the Policy.

The Policy also expressly excludes from "Covered Cause of Loss" any damages resulting from "[f]aulty, inadequate or defective ... [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; ... [or m]aintenance;" unless such damage "results in a Covered Cause of Loss." *Id.* at 104.

The Insurer denied the claim. Defs.'s App. 160-67. The Insurer contends that it properly denied coverage because: (1) the Policy excludes coverage for interior rain damage; (2) the exception providing coverage for interior rain damage applies only when there is first other covered damage to the Property's roofs; and (3) the roofers' actions do not qualify as a covered cause of loss. *See* Pl.'s Br. 2. The Property Owners disagree, contending that the roofers negligently damaged the roofs, which they argue qualifies as a covered cause of loss. *See* Defs.' Br. 9, 16-17.

## II.  LEGAL STANDARD

### a.  *Summary Judgment*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is "material" if it might reasonably affect the outcome of the case. *Anderson*, 477 U.S. at 248.

Where, as here, a case is presented by way of cross-motions for summary judgment, the parties' burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial. A movant who bears the burden of proof at trial must establish

3

"beyond peradventure all of the essential elements of the [claim or] defense." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (emphasis omitted) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

By contrast, a party who does not have the burden of proof at trial may demonstrate entitlement to summary judgment by either (1) submitting evidence that negates an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita*, 475 U.S. at 586-87. "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### b. *Insurance*

Courts interpret insurance policies under ordinary principles of contract law. *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 300 (5th Cir. 2020); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). The Court's "primary concern is to give effect to the intentions of the parties as expressed by the policy language." *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). In doing so, the Court gives terms used in the policy "their plain, ordinary meaning unless the policy itself shows that the parties

4

intended the terms to have a different, technical meaning." *Id.* However, "[w]hen terms are defined in an insurance policy, those definitions control the interpretation of the policy." *E. Concrete Materials*, 948 F.3d at 300 (internal quotation marks omitted) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 219 (Tex. 2003)). "[A] court should interpret an insurance policy in a way which (1) confers meaning to all its terms; (2) harmonizes and gives effect to all of the provisions; and (3) avoids rendering parts of the policy inoperative or meaningless." *Great Am. Ins. Co. v. Emps. Mut. Cas. Co.*, 18 F.4th 486, 490 (5th Cir. 2021) (cleaned up).

Under Texas law, the insured initially bears the burden of establishing coverage under the terms of an insurance policy. *O'Quinn v. Lexington Ins. Co.*, 906 F.3d 363, 367 (5th Cir. 2018); *JAW The Pointe, LLC v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). Once coverage is established, the burden shifts to the insurer to prove the loss is excluded from coverage. *O'Quinn*, 906 F.3d at 367. If an exclusion applies, the insured must then establish that an exception to the exclusion exists to restore coverage. *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014) (citing *Gilbert*, 327 S.W.3d at 124).

"Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Am. Home Assur. Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Gilbert*, 327 S.W.3d at 133). An ambiguity does not exist, however, "simply because the parties interpret a policy differently. If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* "When an exclusion is clear and unambiguous, [the Court] interpret[s] it according to its plain meaning, [giving] no deference to the insured's interpretation. *Id.* (citing *Travelers Lloyds Ins. Co. v. Pac. Emp'rs Ins. Co.*, 602 F.3d 677, 681 (5th Cir. 2010)). As such, cases involving the interpretation of

5

insurance policies are particularly appropriate for summary disposition. *Gonzalez v. Denning*, 394 F.3d 388, 395 (5th Cir. 2004); *Principal Health Care of La., Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 242 (5th Cir. 1994).

### III.     ANALYSIS

Because the Policy is an "all-risks" policy, the Property Owners are entitled to coverage for physical damage resulting from any cause that is not excluded by the Policy. *Alton Ochsner Med. Found.*, 219 F.3d at 504. The Policy, however, expressly excludes coverage for "loss of or damage to . . . [t]he interior of any building or structure . . . caused by or resulting from rain." Defs.' App. 105. Therefore, there is no coverage unless the Property Owners can establish an exception to this exclusion. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998). Though the Policy does provide an exception to the exclusion of interior rain damage if the "building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters," at least three different clauses exclude the roofers' work from the Policy's definition of "Covered Cause of Loss."

First, interior rain damage is only covered if the "roofs or walls" were first "damaged" by a "Covered Cause of Loss." Here, the roofs were not damaged; they were removed in order to be replaced. There is no contention that the roofs were damaged before they were removed, or that the portion of the roof that had not yet been removed was damaged. Nor was there any damage to the walls. Because there was no "damage" to the "roof or walls" before rain damaged the Property, the plain language of the Policy excludes coverage for the damage at issue here. The Court agrees with the Insurer that this language alone is sufficient to deny coverage.

In addition, the Policy excludes damage resulting from "[f]aulty, inadequate or defective . . . workmanship." *Id.* at 104. A faulty workmanship clause "excludes coverage for damages resulting from defects in the product caused by faults in the construction process." *Aetna*

6

*Cas. & Sur. Co.*, 690 F.2d at 462 (quotation marks and citation omitted).[2] The Property Owners argue that removal of the roofs and waterproofing the exposed buildings does not constitute "workmanship." Instead, they suggest that the roofers' "negligence" in removing more of the roofs than they could replace in one day ultimately caused the damage. Def's Br. 9-10, 15-19. Relying on the Fifth Circuit's language in *Aetna* explaining that "[i]t is the quality of the product which is excluded from coverage, and not damage to the product caused by negligence during the construction process," the Property Owners advocate for a narrow reading of faulty workmanship that would apply only to defects in a completed roof, rather than the process used to replace the roofs. *Aetna Cas. & Sur. Co.*, 690 F.2d at 462 (quotation marks and citation omitted); *see also* Def's Br. 15-19.

The Property Owners' argument is unavailing. The "negligence" that the Firth Circuit referred to in *Aetna* is "fortuitous damage to construction property extraneous to the construction of the product itself," not damage that results from part of the construction process. *Aetna Cas. & Sur. Co.*, 690 F.2d at 462. The Fifth Circuit offered an example of such negligence: "if one of the insured's employees negligently ran a truck into the tower under construction," resulting damage would not be excluded by a faulty workmanship clause. *Id.* By contrast, damage caused by an "integral part" of the construction "process, (whether due to negligence, inadvertence, misjudgment, or whatnot)" does constitute faulty workmanship. *Id.* (coverage for damage caused by an improperly-performed heat treatment of a metal building was properly denied under a faulty workmanship exclusion). Ultimately, the meaning of faulty workmanship is broader than what is urged by the Property Owners—it encompasses defects in the process of construction, not just a

---

[2] The policy in *Aetna* was a builder's all risk policy, hence its focus on the "construction" process, *Aetna Cas. & Sur. Co.*, 690 F.2d at 462, but its logic extends to other types of construction and repairs as well.

7

defect in the final product itself. *Id.*[3] Here, the damage occurred as roofers removed the roofs to replace them. The removal of existing roofs is certainly an integral part of replacing a roof, as is waterproofing during construction. *Id.* at 462-63; *see also Cedar Ridge, LLC v. Landmark Am. Ins. Co.*, 4 F. Supp. 3d 851, 855 (E.D. La. 2014) (under Louisiana law, installation of tarps on a roof damaged by a hurricane constituted "workmanship" for the purposes of a similar policy exclusion).

Finally, the Policy also excludes damage resulting from "[f]aulty, inadequate or defective . . . repair, construction, renovation, remodeling . . . [and m]aintenance." Because none of these terms are defined elsewhere in the Policy, the Court must apply "their plain, ordinary meaning." *Am. Nat'l Gen. Ins. Co.*, 274 F.3d at 323. "Repair" is defined as "to fix" or "[t]he process of restoring something that has been subjected to decay, waste, injury, or partial destruction, dilapidation, etc." Repair, BLACK'S LAW DICTIONARY (11th ed. 2019). And "renovation" is defined as the "restoration or development of a building which is old or in a poor condition." Renovation, OXFORD ENGLISH DICTIONARY (3rd ed. 2004). "Remodeling" means "updat[ing] or restyl[ing] (a building, etc.), espe[cially] by carrying out extensive building work." Remodeling, *id.* "Construction" is the "[t]he act of building." Construction, BLACK'S LAW DICTIONARY (11th ed. 2019). Finally, "maintenance" constitutes "the care and work put into property to keep it operating and productive; general repair and upkeep." Maintenance, *id.*

---

[3] Other circuit courts have also arrived at the conclusion that "faulty workmanship" includes damage resulting from aspects of the construction process. *See, e.g., BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 332 (8th Cir. 2013) ("the faulty workmanship exclusion to encompass both a flawed product and a flawed process."); *Royal Ins. Co. of Am. v. Duhamel Broad. Enters., Inc.*, 170 F. App'x. 438, 441 (8th Cir. 2006) (per curiam) ("'workmanship' could describe the process of producing something as well as the finished product."); *Tzung v. State Farm Fire and Cas. Co.*, 873 F.2d 1338, 1340 (9th Cir. 1989) ("faulty workmanship" may be interpreted as the flawed quality of a finished product *or* a flawed construction process); *see also L.F. Driscoll Co. v. Am. Prot. Ins. Co.*, 930 F. Supp. 184 (E.D. Pa. 1996) ("faulty workmanship" exclusion precluded coverage for damage caused to a roof in course of making repairs).

8

Removal and replacement of the roofs, as well as waterproofing performed while such a process was underway, falls under the plain meaning of this exclusion. If the roofs were in poor condition before the Property Owners decided to have them replaced, then the project was repair or renovation. If the new roofs were an upgrade from the old roofs, then the project was a renovation. Either way, it was construction and maintenance. The Court is obligated to "interpret an insurance policy in a way which confers meaning to all its terms" and "harmonizes and gives effect to all of the provisions," *Great Am. Ins. Co.*, 18 F.4th 486 at 490 (cleaned up). When its terms are read together, the exclusion at issue here is a broad one designed to exclude coverage for a wide array of different kinds of construction and maintenance work. *See Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 40 F. Supp. 3d 817, 831 (S.D. Tex. 2014) (coverage for water damage caused when a negligently installed roof leaked was properly denied under an identical faulty "workmanship, repair, construction, renovation, remodeling and maintenance" clause); *Cedar Ridge*, 4 F. Supp. 3d at 855 (installation of tarps on a roof damaged by a hurricane constituted "repairs").

## IV.   CONCLUSION

For the reasons stated above, the Court finds the Insurer properly denied coverage under the Policy and therefore **GRANTS** Plaintiff Axis Surplus Insurance Company's First Amended Cross-Motion for Summary Judgment [ECF No. 12] and **DENIES** Defendants' Motion for Summary Judgment [ECF No. 8].

**SO ORDERED.**

SIGNED December 29, 2021.

KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE

9